# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EUGENE ALFRED HARRIS,            )
                                 )
                Plaintiff,       )
                                 )
        v.                       )        1:14CV1005
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social    )
Security,                        )
                                 )
                Defendant.       )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Eugene Alfred Harris, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")) and both parties have moved for judgment (Docket Entries 11, 17); see also Docket Entries 12 (Plaintiff's Memorandum), 18 (Defendant's Memorandum), 19 (Plaintiff's Supplemental Memorandum), 20 (Plaintiff's Second Supplemental Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI, alleging a disability onset date of June 1, 2007. (Tr. 233-42.) Upon denial

of those applications initially (Tr. 89-116) and on reconsideration (Tr. 117-49), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 189-91). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing on July 23, 2013. (Tr. 45-72.) The ALJ thereafter ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 27-39.) The Appeals Council denied Plaintiff's request for review (Tr. 10-13), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.  [Plaintiff] met the insured status requirements of the [] Act through September 30, 2010.

2.  [Plaintiff] has not engaged in substantial gainful activity since June 1, 2007, the alleged onset date.

.  .  .  .

3.  [Plaintiff] has the following severe impairments: left knee osteoarthritis; major depression; bipolar disorder; drug induced mood disorder; polysubstance dependence; personality disorder; hypertension.

.  .  .  .

4.  [Plaintiff's] impairments, including the substance use disorders, meet sections 12.04 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1.

.  .  .  .

5.  If [Plaintiff] stopped the substances use, the remaining limitations would cause more than a minimal impact on t[his] ability to perform basic work activities; therefore, [he] would continue to have a severe impairment or combination of impairments.

2

. . . .

6.   If [Plaintiff] stopped the substance use, [he] would
not have an impairment or combination of impairments that
meets or medically equals the severity of one of the
listed impairments in 20 CFR Part 404, Subpart P,
Appendix 1.

. . . .

7.   If [Plaintiff] stopped the substance use, [he] would
have the residual functional capacity to perform a
reduced range of medium work as defined in 20 CFR
404.1567(c) and 416.967(c). He should not be required to
climb or balance based on his left knee. Due to his
depression, the claimant has a decrease in the ability to
concentrate on and attend to work tasks to the extent
that he is able to perform only simple, repetitive,
routine tasks (i.e., can apply commonsense understanding
to carry out instructions furnished in written, oral, or
diagrammatic form and deal with problems involving
several concrete variables in or from standardized
situations). He is unable to work at jobs requiring
complex decision making, constant change, or dealing with
crisis situations, or work at a job requiring adherence
to a production rate. He is limited to occasional
interaction with co-workers and supervisors and the
public.

. . . .

8.   If [Plaintiff] stopped the substance use, [he] would
be unable to perform past relevant work.

. . . .

12.  If [Plaintiff] stopped the substance use,
considering [his] age, education, work experience, and
residual functional capacity, there would be a
significant number of jobs in the national economy that
[he] could perform.

. . . .

13.  The substance use disorder is a contributing factor
material to the determination of disability because
[Plaintiff] would not be disabled if he stopped the
substance use. Because the substance use disorder is a

3

contributing factor material to the determination of disability, [Plaintiff] has not been disabled within the meaning of the [] Act at any time from the alleged onset date through the date of this decision.

(Tr. 30-39 (bold font and internal parenthetical citations omitted) (emphasis added).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not shown entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro

4

v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of

_____

1 The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

2 "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

7

perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

1) the ALJ "failed adequately to address whether or not [Plaintiff's] substance abuse materially contributed to his osteoarthritis, major depression, personality disorder, and hypertension" (Docket Entry 12 at 3; see also id. ("[The ALJ] failed to follow the applicable legal standards of 42 U.S.C. [§] 423(d)(2)(C) and 20 C.F.R. [§] 416.935.");

2) the ALJ "gratuitously dismissed the April 27, 2012 professional opinion of [Plaintiff's] treating physician, Dr. Bryon Randolph" (id. (citing Tr. 22)); and

---

4 A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

3) "the June 11, 2014 letter of Jennifer Allran, Psychiatric Nurse Practitioner . . . [offering h]er professional opinion, akin to that of a treating physician, was ignored by the Appeals Council" (id. (citing Tr. 19)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 18 at 4-15.)

### 1. Substance Abuse Analysis

According to Plaintiff, the ALJ "failed adequately to address whether or not [Plaintiff's] substance abuse materially contributed to his osteoarthritis, major depression, personality disorder, and hypertension." (Docket Entry 12 at 3.) Specifically, Plaintiff has asserted that the ALJ "failed to follow the applicable legal standards of 42 U.S.C. [§] 423(d)(2)(C) and 20 C.F.R. [§] 416.935." (Id.) "The statute in question provides that, 'an individual shall not be considered to be disabled for purposes of this subchapter [which addresses DIB claims] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.'" Huff v. Colvin, No. 1:10CV695, 2014 WL 575721, at *3 (M.D.N.C. Feb. 11, 2014) (unpublished) (Peake, M.J.) (quoting 42 U.S.C. § 423(d)(2)(C)) (internal brackets omitted), recommendation adopted, slip op. (M.D.N.C. Mar. 25, 2014) (Osteen, Jr., C.J.); see also 42 U.S.C. § 1382c(a)(3)(J) (imposing same bar for SSI claims); Mitchell v. Commissioner of Soc. Sec., 182 F.3d 272, 274 (4th Cir.

9

1999) (observing that federal law "precludes an award of DIB and SSI to those disabled by alcoholism or drug addiction" and citing 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)). Coordinately, the regulation referenced by Plaintiff (which governs SSI claims) states: "If [the Social Security Administration] find[s] that [a claimant is] disabled and [the Social Security Administration] ha[s] medical evidence of [the claimant's] drug addiction or alcoholism, [the Social Security Administration] must determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability . . . ." 20 C.F.R. § 416.935(a); <u>accord</u> 20 C.F.R. § 404.1535(a) (regulating DIB claims).[5]

The regulation at issue also offers this explanation of the "[p]rocess [the Social Security Administration] will follow when [it] ha[s] medical evidence of [a claimant's] drug addiction or alcoholism," 20 C.F.R. § 416.935(b):

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is <u>whether we would still find you disabled if you stopped using drugs or alcohol</u>.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon

---

[5] Plaintiff thus has misframed the relevant inquiry by arguing that the ALJ "failed adequately to address whether or not [Plaintiff's] <u>substance abuse materially contributed to his osteoarthritis, major depression, personality disorder, and hypertension</u>" (Docket Entry 12 at 3 (emphasis added)); the Court instead must decide if the ALJ applied the wrong legal standard or made findings unsupported by substantial evidence in "determin[ing] whether [Plaintiff's] <u>drug addiction or alcoholism [wa]s a contributing factor material to the determination of disability</u>," 20 C.F.R. §§ 404.1535(a), 416.935(a) (emphasis added).

10

which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

Id. (emphasis added); accord 20 C.F.R. § 404.1535(b).

"The claimant bears the burden to prove that he [or she] would be disabled if he [or she] stopped using alcohol [and/or drugs]." Morgan v. Colvin, 1:12CV1326, 2015 WL 631164, at *4 (M.D.N.C. Feb. 12, 2015) (unpublished) (Webster, M.J.) (citing McCray v. Colvin, C/A No. 1:13–173–SVH, 2014 WL 3798835, at *13 (D.S.C. July 31, 2014) (unpublished), which quotes Newsome v. Astrue, 817 F. Supp. 2d 111, 126 (E.D.N.Y. 2011), and cites Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007), Doughty v. Apfel, 245 F.3d 1274, 1280 (11th Cir. 2001), Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000), Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999), and White v. Commissioner of Soc. Sec., 302 F. Supp. 2d 170, 173 (W.D.N.Y. 2004)), recommendation adopted, slip op. (M.D.N.C. Mar. 31, 2015) (Biggs, J.); accord Cage v. Commissioner of Soc. Sec., 692 F.3d 118, 123-25 (2d Cir. 2012); Joyner v. Astrue, No. 4:11CV138FL, 2012 WL 3870359, at *2 (E.D.N.C. Sept. 6, 2012) (unpublished); Walsh v.

<u>Astrue</u>, Civ. Action No. TMD 10-3259, at *2 (D. Md. Mar. 8, 2012) (unpublished); <u>Weaver v. Astrue</u>, No. 3:10CV568-GCM-DCK, 2011 WL 4596122, at *14 (W.D.N.C. Aug. 10, 2011) (unpublished), <u>recommendation adopted</u>, 2011 WL 4596449 (W.D.N.C. Sept. 30, 2011) (unpublished); <u>Blankenship v. Astrue</u>, 635 F. Supp. 2d 447, 451 (W.D. Va. 2009). Plaintiff has not shown that the ALJ applied the wrong legal standard or lacked substantial evidence to conclude that Plaintiff failed to carry his burden on that front.

In that regard, at step two of the SEP, the ALJ concluded that Plaintiff's "polysubstance dependence" rose to the level of a severe impairment and that he suffered from four other severe mental disorders, "major depression; bipolar disorder; drug induced mood disorder; . . . [and] personality disorder," as well as two severe physical impairments, "left knee osteoarthritis" and "hypertension." (Tr. 30 (bold font omitted).) Further, at the SEP's third step, the ALJ expressly considered whether Plaintiff's "mental impairments, including the substance use disorders, me[]t [L]istings 12.04 and 12.09." (<u>Id.</u>)[6]

Listing 12.04 addresses "Affective Disorders," limited to this "diagnostic description": "[A] disturbance of <u>mood</u>, accompanied by a full or partial manic or <u>depressive syndrome</u>. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either <u>depression</u> or elation." 20 C.F.R. Part 404,

_____

[6] Plaintiff has <u>not</u> argued that his left knee osteoarthritis or hypertension met a listing. (<u>See</u> Docket Entries 12, 19, 20.)

Subpart P, App. I, § 12.04 (emphasis added). Listing 12.09, in turn, concerns "Substance Addiction Disorders," i.e., "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." Id., § 12.09.

To meet Listing 12.04, a claimant generally must satisfy not only the above-quoted "diagnostic description" for "Affective Disorders," but also "paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations)." Id., § 12.00(A) (emphasis added); see also id. ("We will find that you have a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied.").[7] By contrast, Listing 12.09 does not impose independent requirements; instead, it incorporates the listing-level standards for nine different mental and physical disorders associated with substance abuse, including Listing 12.04 (as well as Listing 12.08, pertaining to Personality

_____

[7] "There are additional functional criteria (paragraph C criteria) in . . . [Listing] 12.04 . . . . [The Social Security Administration] will assess the paragraph C criteria only if [it] find[s] that the paragraph B criteria are not satisfied." 20 C.F.R. Part 404, Subpart P, App. I, § 12.00(A); see also id., § 12.04(C). Notwithstanding the foregoing and above-quoted language from Section 12.00(A) (which appears to permit Paragraph C criteria to function only as a substitute for Paragraph B criteria), Listing 12.04 seemingly allows satisfaction of Paragraph C's elements to take the place of proof as to the elements of both Paragraphs A and B. See id., § 12.04 ("The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied."). The Court, however, need not wrestle with these finer points regarding the role of Listing 12.04's Paragraph C criteria, because Plaintiff has not argued that the record would have permitted (much less required) the ALJ to find that Plaintiff satisfied such criteria (either while using alcohol and drugs or abstaining). (See Docket Entries 12, 19, 20.)

13

Disorders). See id., § 12.09; see also id., § 12.00(A) ("Listing 12.09 is structured as a reference listing; that is, it will only serve to indicate which of the other listed mental or physical impairments must be used to evaluate the behavioral or physical changes resulting from regular use of addictive substances.").

Paragraph A of Listing 12.04 consists of these elements:

Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

14

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking; <u>or</u>

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)[.]

<u>Id.</u>, § 12.04(A) (emphasis added).  The ALJ decided that Plaintiff satisfied the diagnostic description and Paragraph A of Listing 12.04, because "he ha[d] a drug induced mood disorder" and "medically documented persistence of a depressive syndrome with decreased energy, difficulty concentrating or thinking, and thoughts of suicide."  (Tr. 30; <u>see also</u> Tr. 31-32 (discussing, inter alia, "December 2011 emergency room notes . . . show[ing that Plaintiff was] intoxicated and expressing suicidal or homicidal ideation," but that "[o]nce sober his mood stabilized," as well as records from a mental health care provider documenting Plaintiff's treatment with prescription drugs in 2012 and 2013).)[8]

Paragraph B of Listing 12.04 requires proof that the condition documented via Paragraph A "result[ed] in at least <u>two</u> of the following: 1. <u>Marked</u> restriction of activities of <u>daily living</u>; or 2. <u>Marked</u> difficulties in maintaining <u>social functioning</u>; or 3. <u>Marked</u> difficulties in maintaining <u>concentration, persistence, or</u>

---

[8]  The ALJ thus actually lightened Plaintiff's burden by finding Paragraph A met, despite noting only three symptoms associated with his depressive syndrome.

pace; or 4. Repeated episodes of decompensation, each of extended
duration[.]" 20 C.F.R. Part 404, Subpart P, App. I, § 12.09(B)
(emphasis added); see also id., §§ 12.00(C) ("Where we use 'marked'
as a standard for measuring the degree of limitation, it means more
than moderate but less than extreme. . . . Episodes of
decompensation are exacerbations or temporary increases in symptoms
or signs accompanied by a loss of adaptive functioning . . . . The
term repeated episodes of decompensation, each of extended duration
in these listings means three episodes within 1 year, or an average
of once every 4 months, each lasting for at least 2 weeks."), 12.08
(requiring, as to Listing 12.08, "Personality Disorders," proof of
same Paragraph B criteria as Listing 12.04).  The ALJ ruled that
Plaintiff's depressive syndrome and related symptoms qualified
under Paragraph B of Listing 12.04 because, although they only
"resulted in a mild restriction in activities of daily living
. . . and one-to-two [] episodes of decompensation" (Tr. 30), they
caused "marked difficulty in maintaining social functioning and
marked difficulty in maintaining concentration, persistence or
pace" (id. (emphasis added)).

     Based on those findings, the ALJ concluded that Plaintiff's
"mental impairments, including the substance use disorders, me[]t
[L]istings 12.04 and 12.09."  (Id. (emphasis added).)  Next,
consistent with the governing regulations, see 20 C.F.R.
§§ 404.1535(b), 416.935(b), "the [ALJ] f[ou]nd[] that drug

addiction and alcoholism [we]re contributing factors that [we]re material to this finding of disability." (Tr. 30 (emphasis added).) Specifically, the ALJ determined that, "[i]f [Plaintiff] stopped the substance use, . . . [he] would continue to have a severe impairment or combination of impairments . . . , [but] the remaining limitations would not meet or medically equal the criteria of [L]istings 12.04 or 12.08." (Id. at 33 (bold font omitted).) Even more granularly, the ALJ explained that, "[i]n terms of the 'paragraph B' criteria, . . . [i]n social functioning, [Plaintiff] would have moderate difficulties if the substance use was stopped. . . . With regard to concentration, persistence or pace, [he] would have moderate difficulties if the substance use was stopped." (Id. (emphasis added); see also id. (finding that, absent substance abuse, Plaintiff's "restriction in activities of daily living" would remain only "mild" and he "would experience no episodes of decompensation").)[9]

To support the foregoing determinations, the ALJ noted, as to "social functioning," that Plaintiff's "anger management and reduced ability to interact with others was evident when he was

---

[9] As documented above, Listings 12.04 and 12.08 share the same Paragraph B requirements. Accordingly, although the ALJ never expressly found that Plaintiff would have met Listing 12.08 prior to reassessing his limitations without alcohol and drug use, upon concluding that Plaintiff, if sober, would lack limitations that satisfied the Paragraph B criteria applicable to both Listings 12.04 and 12.08, the ALJ could conclude that Plaintiff could not qualify as disabled under Listing 12.08 (particularly because Listing 12.08 contains no alternative Paragraph C criteria, see 20 C.F.R. Part 404, Subpart P, App. I, § 12.08). In addition, Plaintiff has not contended that his personality disorder met the requirements of Listing 12.08. (See Docket Entries 12, 19, 20.)

under the influence of alcohol or drugs." (Tr. 32 (emphasis added); see also id. ("[W]hen using and under the influence of drugs and/or alcohol, [Plaintiff] was . . . charged with domestic violence.").) Similarly, the ALJ observed that, "[a]part from using drugs or alcohol, [Plaintiff's] mood was calmer and affect positive." (Id. (emphasis added); see also id. (noting, from record of hospitalizations, that "after binging alcohol [Plaintiff] bec[a]m[e] depressed").)

Further, in relation to both "social functioning" and "concentration, persistence or pace," the ALJ credited a state agency psychologist's findings that:

> [I]n the absence of drug and alcohol abuse . . . [Plaintiff was] capable of understanding, learning and retaining simple work instructions. [He] was able to sustain attention and persist at simple, routine tasks for extended periods of two hour segments. He could sustain effort across the work day and work week with appropriate work breaks and maintain regular attendance and be punctual within customary tolerances. He had the ability to get along with co-workers and peers in an appropriate manner without distracting them or exhibiting behavioral extremes. [He] could accept instructions and respond appropriately to supervision.

(Tr. 33 (internal citation omitted); see also id. ("This opinion is well supported by medically acceptable clinical records and is not inconsistent with the other substantial evidence and, therefore, is entitled to substantial weight, but the [ALJ] notes these [findings regarding Plaintiff's capacity] are only in the absence of drug and alcohol abuse.").) Finally, again bearing on both "social functioning" and "concentration, persistence or pace," the ALJ

18

found that, "[i]n periods of at least partial sobriety (drinking mostly on weekends) as more recent records show, and compliance with medication, [Plaintiff] was able to function in programs that were designed to help the unemployed in getting back into the work force. This involved classwork and working with others." (Id.; see also id. at 31 (discussing record of Plaintiff's visit with mental health care provider on May 8, 2013 (Tr. 746-52), at which Plaintiff reported "drinking alcohol on weekends," as well as "that things were going fine for him and he was looking for a job").)

Rather than identifying any legal deficiency in the ALJ's foregoing thorough analysis or any lack of substantial evidence for the ALJ's instant well-supported findings, Plaintiff has resorted to distortions, conclusory assertions, and baseless claims of bias:

> The [ALJ] felt that absent the substance abuse, [Plaintiff] is good to go. It makes no sense. From this record as a whole, it is difficult if not impossible to imagine [Plaintiff], faithfully on all his meds, gainfully employed on a full time basis. What we may have here is some judicial disdain for the poor, the homeless, and the drunk.

(Docket Entry 12 at 2.) The Court should reject that approach.

As to distortion, the quotations above from the ALJ's decision make clear that the ALJ did not cavalierly conclude that, "absent the substance abuse, [Plaintiff] is good to go" (id.); rather, the ALJ merely determined (based on a careful review of the record) that, if/when Plaintiff ceased abusing drugs and alcohol, his level of impairment in "social functioning" and "concentration,

19

persistence or pace" would decline from "marked" to "moderate" (Tr. 30-34). Because that finding meant Plaintiff no longer could meet Listing 12.04 (or Listing 12.08), the ALJ ruled, under the applicable regulations, 20 C.F.R. §§ 404.1535(b), 416.935(b), that "drug addiction and alcoholism [we]re contributing factors that [we]re material to th[e] finding of disability [the ALJ otherwise made when considering Plaintiff's substance abuse along with his other mental disorders]." (Tr. 30.)

Nor, for at least two reasons, can Plaintiff obtain reversal of those rulings by the ALJ by asserting in conclusory fashion that, "[f]rom this record as a whole, it is difficult if not impossible to imagine [Plaintiff], faithfully on all his meds, gainfully employed on a full time basis" (Docket Entry 12 at 2). First, the Court does not undertake a de novo review of the evidence and then decide if it finds it "difficult if not impossible to imagine" Plaintiff working full-time; instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted); see also Frady, 646 F.2d at 144 (describing judicial review function in Social Security context as "extremely limited"). Second, Plaintiff cannot prevail in this Court by opaquely pointing to the "record as a whole"; to the contrary, he "bears the burden of establishing [his]

20

impairments and the resulting limitations on [his] ability to perform work," Donnell v. Astrue, No. 1:09CV308, 2010 WL 3911425, at *3 (M.D.N.C. Oct. 5, 2010) (unpublished) (Dixon, M.J.), recommendation adopted, slip op. (M.D.N.C. Nov. 5, 2010) (Schroeder, J.), and "conclusory arguments without citation to the record are insufficient to meet his burden," Albertson v. Colvin, No. CV12-2508-JPR, 2013 WL 2251639, at *18 (C.D. Cal. May 22, 2013) (unpublished), appeal filed, No. 13-56245 (9th Cir. July 17, 2013).

In like fashion, Plaintiff gains nothing from his unsupported suggestion that the ALJ acted out of "disdain for the poor, the homeless, and the drunk" (Docket Entry 12 at 2). See Partee v. Astrue, 638 F.3d 860, 865 (8th Cir. 2011) ("There is a 'presumption of honesty and integrity in those serving as adjudicators.' Withrow v. Larkin, 421 U.S. 35, 47 (1975). [The plaintiff's] bias claim consists entirely of unsupported allegations based on the ALJ's decision itself, and we find it unfounded." (internal parallel citations omitted)); Rosas v. Colvin, No. CV 13-2756-SP, 2014 WL 3736531, at *3 (C.D. Cal. July 28, 2014) (unpublished) ("ALJs 'are presumed to be unbiased.' Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). This presumption may be 'rebutted by a showing of conflict of interest or some other specific reason for disqualification.' Id. at 858. Here, [the] plaintiff offers nothing more than conclusory allegations of bias."); Wright v. Colvin, No. 12-21773-CIV, 2014 WL 3400978, at *8 (S.D. Fla. July

11, 2014) (unpublished) ("Conclusory allegations and speculation are not enough to support a finding that the ALJ was biased."). Indeed, the Court should condemn "the manner in which [Plaintiff's] counsel attacked the ALJ and his decision-making process . . . [with] unsupported allegations . . . suggesting that the ALJ was perhaps biased. These personal attacks are unwarranted, distracting, and d[o] not aid counsel's attempt to advocate on behalf of his client." <u>Williams v. Colvin</u>, No. 14-1081-CM, 2015 WL 2092504, at *2 (D. Kan. May 5, 2015) (unpublished).

Plaintiff's Memorandum comes closest to presenting a colorable argument against the ALJ's handling of the substance abuse issue when, after asserting that the ALJ "failed to follow the applicable legal standards of 42 U.S.C. [§] 423(d)(2)(c) and 20 C.F.R. [§] 416.935" (Docket Entry 12 at 3), it states: "In that respect this case is very similar to <u>Drapeau v. Massanari</u>, 225 [sic] F.3d 1211 (10th Cir. 2001). See also <u>Bustamante v. Massanari</u>, 262 F.3d 949 (9th Cir. 2001), <u>Salazar v. Barnhardt</u> [sic], 468 F.3d 615 (10th Cir. 2006), and <u>Hildebrand v. Barnhardt</u> [sic], 302 F.3d 836 (8th Cir. 2002)." (Docket Entry 12 at 3.) However, Plaintiff did not even attempt to show what, if any, specific aspect of those four decisions, when measured against the record in this case, supports his position that the ALJ misapplied the statutory and regulatory provisions in question. (<u>See</u> <u>id.</u>) Particularly given the "extremely limited" nature of judicial review in this sphere,

22

_Frady_, 646 F.2d at 144, Plaintiff cannot "merely cite[] cases without explanation and offer[] conclusory assertions," _Peck v. United States_, No. CIV S-11-151 JAM DAD PS, 2011 WL 3876044, at *5 (E.D. Cal. Sept. 1, 2011) (unpublished); _see also_ _PNY Techs., Inc. v. SanDisk Corp._, No. 11CV4689WHO, 2014 WL 1677521, at *5 n.7 (N.D. Cal. Apr. 25, 2014) (unpublished) ("[The plaintiff] string cites 10 opinions without adequately explaining how each is applicable to this case. . . . It is not the [c]ourt's job to dig through each of these cases to discern and craft an argument for [the plaintiff].") ; _Copes v. Chater_, 983 F. Supp. 1268, 1274 n.2 (E.D. Mo. 1997) (criticizing use "of string cites followed by scant or no application of the law to the facts of [the] case").

To make matters worse, having neglected his own obligation "to spell out [hi]s arguments squarely and distinctly, or else forever hold [hi]s peace," _United States v. Zannino_, 895 F.2d 1, 17 (1st Cir. 1990) (internal quotation marks omitted), Plaintiff replied to Defendant's dispositive filing by temerariously chastising her for "ignor[ing] the substantially pertinent cases [he] cited, meaningful in this case" (Docket Entry 19 at 1).[10]  If, in moving

---

10  Nor, in again referencing _Drapeau_, _Bustamante_, _Salazar_, and _Hildebrand_, did Plaintiff's Supplemental Memorandum remedy the failure of analysis that characterizes his Memorandum; to the contrary, although the Supplemental Memorandum selectively block-quotes from the first three of those opinions, it does not attempt to explain how their _reasoning_ demonstrates any shortcoming in the ALJ's handling of substance abuse issues in this case. (_See_ Docket Entry 19 at 1-6.)  Instead, the Supplemental Memorandum evidently hopes the Court will accept this facile formulation: because the plaintiffs in _Drapeau_, _Bustamante_, and _Salazar_ suffered from various impairments, including substance dependence, and obtained favorable judicial rulings, Plaintiff should obtain a favorable
(continued...)

for judgment, Plaintiff could not bother to explain the pertinence or meaningfulness of Drapeau, Bustamante, Salazar, and Hildebrand, he surely cannot fault Defendant for declining to discuss them. See generally Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1128 n.6 (10th Cir. 1999) ("[Plaintiffs] develop[ed] this argument so superficially, however, as to waive it.").

In any event, Drapeau, Bustamante, Salazar, and Hildebrand do not establish that the ALJ "failed to follow the applicable legal standards of 42 U.S.C. [§] 423(d)(2)(c) and 20 C.F.R. [§] 416.935" (Docket Entry 12 at 3). The first of those decisions involved a claimant who contracted polio as an infant and, as an adult, "alleg[ed] disability due to post-polio syndrome." Drapeau, 255 F.3d at 1212 (describing post-polio syndrome as "muscle fatigue and decreased endurance, often accompanied by weakness, fasciculations, and atrophy in selective muscles . . . occur[ring] many years after an attack of paralytic poliomyelitis" (internal quotation marks omitted)). She "ha[d] also been diagnosed with dysphagia, a condition that makes swallowing difficult[, as well as] . . . significant depressive symptoms . . . [, and] ha[d] a long history of alcohol abuse." Id. (internal citations omitted).

---

10 (...continued)
judicial ruling, given that he suffers from impairments, including substance dependence. (See id.) In fact, as shown in the discussion that follows above, a review of Drapeau, Bustamante, and Salazar (as well as Hildebrand) does not reveal any flaw in the ALJ's consideration of Plaintiff's substance abuse.

The claimant "contend[ed] her impairments me[]t or equal[ed] the criteria for Listing 11.11, the listing for anterior poliomyelitis . . . [which she could satisfy by showing that she] ha[d] anterior poliomyelitis . . . [and] exhibit[ed a] persistent difficulty with swallowing . . . ." Id. at 1212-13. Her "treating physician [] stated his opinion that [she] met the listing for anterior poliomyelitis because of her diagnosis of post-poliomyelitis coupled with dysphagia, which causes difficulty in swallowing." Id. at 1213. Nonetheless, an ALJ concluded, based only on a consultative physician's report, that the claimant did not meet any listing. Id. The ALJ further ruled the claimant ineligible for benefits due to depression because her "alcohol abuse is a material factor in determining whether she is disabled." Id. at 1214 (internal brackets and quotation marks omitted).

The Tenth Circuit found error warranting remand first because "[t]he ALJ did not provide any analysis of why [the claimant] did not meet Listing 11.11, did not mention or discuss [the treating physician's] report, did not provide any explanation for why he disregarded the opinion of a treating physician, and did not provide any reason for giving greater weight to the opinion of a consulting physician than to a treating physician." Id. at 1213. The Drapeau opinion further deemed the ALJ's approach to the alcoholism issue "flawed," primarily because "the ALJ failed to determine whether [the claimant] was disabled prior to finding that

25

alcoholism was a contributing factor material thereto." Id. In other words, the ALJ did not "apply § 423(d)(2)(C) properly [because]. . . he ha[d] not yet made a finding of disability." Id. The Tenth Circuit finally observed that the ALJ had only focused on whether the claimant's alcoholism precluded a finding of disability due to depression and, therefore, had not considered whether she qualified as disabled in light of all her impairments, notwithstanding her alcoholism. See id.

None of those considerations arise in this case. First, Plaintiff has not argued that any of his physical impairments could satisfy a listing (with or without continued substance abuse). (See Docket Entries 12, 19, 20.) Further, the ALJ here expressly found that Plaintiff's mental impairments rose to listing-level, before determining that, without substance abuse, Plaintiff's degree of limitation fell below listing-level. (See Tr. 30-34.) Finally, the ALJ thereafter analyzed all of Plaintiff's impairments (physical and mental) together and concluded that, if he ceased substance abuse, he retained the RFC to perform jobs available in significant numbers in the national economy. (See Tr. 34-39.)[11]

---

11 Specifically, the ALJ's RFC assessment: (1) discussed Plaintiff's bipolarism, depression, left knee osteoarthritis, and hypertension; (2) adopted restrictions related to the first three of those conditions; and (3) explained the absence of limitations for the fourth. (See Tr. 34-37.) Moreover, Plaintiff has not identified any further restrictions the ALJ should have incorporated into the RFC to account for any of the four, foregoing conditions or Plaintiff's personality disorder. (See Docket Entries 12, 19, 20.) Accordingly, to the extent Plaintiff contends the ALJ erred by listing "only one severe impairment, Bipolar Disorder, [as] remain[ing] '[i]f [Plaintiff] stopped the substance abuse'" (Docket Entry 12 at 2-3 (quoting Tr. 33)), that error would not warrant
(continued...)

*Drapeau* thus does not support Plaintiff's challenge to the ALJ's instant denial of disability benefits.

Next among the opinions cited by Plaintiff, *Bustamante* (like *Drapeau*) addressed "whether it is error for an ALJ to determine that a claimant's mental impairments are the product and consequence of his alcohol abuse prior to making a determination that the claimant is disabled under the five-step inquiry." *Bustamante*, 262 F.3d at 954-55 (internal quotation marks omitted). The Ninth Circuit agreed with the Tenth Circuit's *Drapeau* decision on that point and held that "an ALJ should not proceed with the analysis under §§ 404.1535 or 416.935 if he or she has not yet found the claimant to be disabled under the five-step inquiry."

---

11 (...continued)
remand because, "upon determining that a claimant has one severe impairment, the [ALJ] must continue with the remaining steps," Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); accord Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Ashby v. Colvin, Civ. Action No. 2:14-674, 2015 WL 1481625, at *2-6 (S.D.W. Va. Mar. 31, 2015) (unpublished); Powell v. Astrue, 927 F. Supp. 2d 267, 274-75 (W.D.N.C. 2013); Baker v. Astrue, Civ. No. SAG-10-1045, 2012 WL 12751, at *3-4 (D. Md. Jan. 3, 2012) (unpublished); Clark v. Commissioner of Soc. Sec., No. 2:09CV417, 2010 WL 2730622, at *11 (E.D. Va. June 3, 2010) (unpublished), recommendation adopted, 2010 WL 2731380 (E.D. Va. July 9, 2010); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); Washington v. Astrue, 698 F. Supp. 2d 562, 579 (D.S.C. 2010); Jones v. Astrue, No. 5:07CV452FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished). The ALJ here found a severe impairment at step two (even absent substance abuse) and proceeded with the remaining SEP steps (adopting in due course an RFC as to which Plaintiff has articulated no concrete objection). (See Tr. 33-39; Docket Entries 12, 19, 20.) Any alleged misapplication of law at step two thus caused Plaintiff no prejudice. See Oldham, 509 F.3d at 1256-57; Lewis, 498 F .3d at 911; Maziarz, 837 F.2d at 244; Ashby, 2015 WL 1481625, at *2-6; Powell, 927 F. Supp. 2d at 274-75 Baker, 2012 WL 12751, at *3-4; Clark, 2010 WL 2730622, at *11; Lauver, 2010 WL 1404767, at *4; Washington, 698 F. Supp. 2d at 579-80; Jones, 2009 WL 455414, at *2; see also McAnally v. Astrue, 241 F. App'x 515, 518 (10th Cir. 2007) ("[W]ith regard to her hypertension, loss of vision or skin problems, the claimant has shown no error by the ALJ because [the claimant] does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitation." (internal brackets and quotation marks omitted)).

Id. at 955. That holding does not counsel remand in this case, as the ALJ here first found that Plaintiff qualified as disabled, before analyzing whether that disability finding could stand absent ongoing substance abuse by Plaintiff. (See Tr. 30-34.)

The third of the opinions on which Plaintiff relies, Salazar, focuses on a Social Security Administration "teletype on applying [the statutory prohibition against benefit awards where substance abuse materially contributes to the disability finding], which speaks to situations where a claimant has one or more other mental impairments in addition to [substance abuse]." Salazar, 468 F.3d at 623. The teletype "stresses the need for careful examination of periods of abstinence and also directs that if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the [substance abuse] is not a contributing factor material to the disability determination[.]" Id. The Salazar Court acknowledged that an ALJ's "failure to specifically mention the teletype is not fatal," but concluded that an error occurred in that case because "there [wa]s not substantial evidence to support the ALJ's conclusion that [the claimant] would not be disabled in the absence of her [substance abuse]." Id. at 624. Specifically, "the ALJ's finding that [the claimant's] mental impairments improved after a period of sobriety [wa]s based on a mistaken reading of the evidence." Id.; see also id. ("[T]he record establishes that . . . after forty days of sobriety (the

28

longest documented period in the record), [a doctor] referred [the plaintiff] . . . for inpatient psychiatric treatment for 'increasing depression, hopelessness, and suicidal ideation.'").

By contrast, in this case (as previously discussed), the ALJ made detailed findings, supported by substantial evidence, that Plaintiff's mental functioning acutely worsened when he abused alcohol and/or drugs and materially improved when he did not. (See Tr. 30-34.) In the words of another court also recently confronted with a Social Security claimant's inapt invocation of Salazar:

> [U]nlike here, the mental condition of th[e] claimant [in Salazar] deteriorated dramatically in the absence of alcohol. In fact, that claimant's mental condition became so bad during a period of sobriety that she had to be hospitalized. In this case, the correlation is just the opposite. Here, according to both expert opinion and [Plaintiff's own statements], [Plaintiff] improves during periods of sobriety.

Reid v. Colvin, No. 14CV2336KMT, 2015 WL 4979768, at *4 (D. Colo. Aug. 21, 2015) (unpublished); see also Huff, 2014 WL 575721, at *5 (rejecting challenge relying on teletype discussed in Salazar, where "record contain[ed] ample medical evidence contrasting [the claimant's] functional abilities during periods of drug use and relative sobriety"). Accordingly, Salazar lights no path to relief for Plaintiff.[12]

---

12  To the extent the Tenth Circuit in Salazar, 468 F.3d at 624, read the Social Security Administration's above-referenced teletype to establish "a brightline rule that an ALJ cannot find that drug or alcohol use is a contributing factor [to the disability determination] where there is no medical opinion addressing the issue, . . . such a rule, found nowhere in the U.S. Code or C.F.R., is unsound. It would unnecessarily hamper ALJs and impede the efficient disposition of applications in circumstances that demonstrate [drug and alcohol use] (continued...)

In the last of the decisions cited by Plaintiff, the Eighth
Circuit considered an appeal where:

> During the administrative hearing . . ., the ALJ noted
> the allegations of [the claimant's] drug addiction, and
> recognized additionally that [she] was indeed disabled.
> Rather than decide whether [the claimant] was entitled to
> relief, the ALJ continued the hearing and requested that
> [the claimant] submit to a psychological evaluation in
> order to more fully develop the record. These
> examinations were never completed. Rather, the ALJ
> decided against [the claimant], finding that she would
> not be disabled independent of her alcoholism and drug
> addiction.

Hildebrand, 302 F.3d at 838 (internal footnote omitted). The court
remanded the case for further administrative action, because "the
ALJ's decision [wa]s devoid of any analysis regarding any current
addiction to account for [the claimant's] disability." Id. at 839.
As discussed above, the ALJ's instant denial of Plaintiff's
disability claim(s) suffers from no such want of analysis, but
instead shows in a thorough and well-supported fashion the manner
in which substance abuse materially contributed to Plaintiff's
disability during the period for which he sought benefits. (See
Tr. 30-34.) Plaintiff's reliance on Hildebrand, like his citation
to Drapeau, Bustamante, and Salazar, therefore comes to naught.

In sum, the Court should deem meritless Plaintiff's assignment
of error premised on the ALJ's purported "fail[ure] to follow the

---

12 (...continued)
materiality in the absence of predictive opinions." Cage v. Commissioner of Soc.
Sec., 692 F.3d 118, 126 (2d Cir. 2012); see also id. at 125 ("[T]he Teletype, as
an unpromulgated internal agency guideline, does not have the force of law and
is entitled to deference only insofar as it has the power to persuade.").

applicable legal standards of 42 U.S.C. [§] 423(d)(2)(C) and 20 C.F.R. [§] 416.935" (Docket Entry 12 at 3).

## 2. Dr. Randolph's Letter

Plaintiff's second issue on review faults the ALJ for not giving sufficient weight to the opinion expressed by Dr. Randolph in a letter dated April 27, 2012. (See id. (citing Tr. 22); see also Tr. 36 ("giv[ing] little weight" to said letter).) The treating source rule generally requires an ALJ to assign controlling weight to a treating source's opinion regarding the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, opinions on the ultimate issue of disability do not receive controlling weight because the Commissioner retains the authority to render such decisions. 20 C.F.R. §§ 404.1527(e), 416.927(e).

Dr. Randolph's instant letter states in its entirety:

[Plaintiff] is being treated at Lincoln Community Health Center for multiple medical problems. These include Bipolar Disease, Asthma, Knee Deformity, and Arthritis. He is currently seeing a Psychiatrist and he is on Risperdal, Depakote, and Welbutrin. Do [sic] to the mood swings along with medications he has not been able to maintain employment. I have recommended that he seek disability. I will gladly complete any documentation if sent to me. If further information is needed I can be reached at 919 956-[XXXX].

(Tr. 22.)[13]  In this text, Dr. Randolph offered only one "opinion," i.e., that, "[d]o [sic] to the mood swings along with medications [Plaintiff] has not been able to maintain employment."  (<u>Id.</u>)[14]

A treating source's opinion that a claimant is "not able to maintain employment [is a] finding[] reserved for the Commissioner, not [a] medical statement[]."  <u>Coheley v. Colvin</u>, No. 2:13CV1810VEH, 2014 WL 6748991, at *6 (N.D. Ala. Dec. 1, 2014) (unpublished), <u>appeal dismissed</u>, No. 15-10383 (11th Cir. July 28, 2015) (unpublished).  As a result, an ALJ properly may "give little weight to [such] opinions . . . ."  <u>Id.</u>; <u>see also</u> <u>Saragas v. Astrue</u>, Civ. Action No. 09-236-DLB, 2010 WL 3432207, at *4 (E.D. Ky. Aug. 30, 2010) (unpublished) ("Contrary to [the p]laintiff's assertions, the ALJ did not commit reversible error when he gave little credence to [a treating physician's] statement that 'it is

_____

13 "Risperdal, and its generic form, risperidone, are prescription antipsychotic medications used to treat patients with mental illness." <u>Ward v. Ortho-McNeil Pharm.</u>, No. 5:14CV120BO, 2015 WL 4110990, at *1 (E.D.N.C. July 7, 2015) (unpublished). "Depakote . . . [is] designed to treat depression, schizophrenia and other forms of mental illness . . . ." <u>Arden v. Commissioner of Soc. Sec.</u>, No. 1:10CV623, 2011 WL 2784435, at *3 (N.D. Ohio June 20, 2011) (unpublished), <u>recommendation adopted</u>, 2011 WL 2745943 (N.D. Ohio July 13, 2011) (unpublished). "Welbutrin . . . [is] commonly prescribed for depression . . . ." <u>Clark v. Commissioner of Soc. Sec.</u>, No. 2:09CV417, 2010 WL 2730622, at *15 (E.D. Va. June 3, 2010) (unpublished), <u>recommendation adopted</u>, 2010 WL 2731380 (E.D. Va July 9, 2010) (unpublished).

14 Thus, contrary to Plaintiff's suggestion (<u>see</u> Docket Entry 19 at 3), Dr. Randolph's single, conclusory opinion regarding an ultimate disability issue differs greatly from the nuanced medical opinions of a treating psychiatrist (Dr. Emily Newman), on which the Ninth Circuit relied in <u>Bustamante</u>, 262 F.3d at 953 (citing Dr. Newman's letter "diagnos[ing the claimant] with 'Psychotic Disorder, 298.90,' 'Alcohol Dependence, 303.9,' and 'Schizotypal Personality Disorder,'" opining "that a recent decrease in alcohol consumption 'has likely contributed to his <i>increase</i> in psychotic symptoms,'" and stating:  "'[The claimant] is quite functionally impaired.  His psychotic symptoms and his anxiety prevent him from being organized enough to remember appointments.  He is too paranoid about people to be able to work in any environment where contact with others is required.'").

unlikely that [the p]laintiff will be able to maintain any type of
employment.'  A treating physician's opinion is only entitled to
deference when it is a medical opinion.  When a treating physician
instead submits an opinion on an issue reserved to the Commissioner
- such as whether the claimant is 'disabled' or 'unable to work' -
the opinion is not entitled to any particular weight." (internal
brackets and citations omitted)).  Plaintiff's instant assignment
of error thus fails as a matter of law.[15]

### 3.  Nurse Practitioner Allran's Letter

Lastly, Plaintiff's Memorandum contends the Appeals Council
"ignored" a letter dated June 11, 2014, from Nurse Practitioner
Allran, when instead the Appeals Council should have treated Nurse
Practitioner Allran's "professional opinion[] akin to that of a
treating physician . . . ."  (Docket Entry 12 at 3.)  However,

---

15 Additionally, as the ALJ noted, "Dr. Randolph d[id] not treat [Plaintiff] for
mental health issues."  (Tr. 36; see also Tr. 55 ("Q  Okay.  Now is [Dr.
Randolph] treating you for the bipolar disorder as well?  A  No.  CBC, Carolina
Behavioral Center."), 62-63 ("Q [Carolina Behaviorial Center] do[es] your mental
health?  A Yes.  Q  At Carolina.  How about your physical health?  Where do you
go?  A  Lincoln Community Center.  Q  Okay.  ATTY:  And that's Dr.
Randolph. . . .  Q  Okay.  So what does Dr. Randolph treat you for?  A  What does
he treat me for?  He helps me with my cholesterol.  Q  Okay.  A  Cholesterol and
pain pills. . . .  Q  Okay.  And where are you having the pain?  A  In my left
knee.").)  The ALJ therefore properly declined to give more than little weight
to Dr. Randolph's opinion that Plaintiff's mood swings and related medications
kept him from working, because the nature and extent of a treatment relationship
may affect the weight given to a treating source opinion.  See 20 C.F.R.
§§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii); see also Berliner v. Colvin, No.
4:13CV2070, 2015 WL 901520, at *13 (E.D. Mo. Mar. 3, 2015) (unpublished) ("[T]he
ALJ properly discounted the opinions of Dr. Belancourt . . . . Dr. Belancourt's
opinion regarding [the p]laintiff's inability to work was based primarily upon
[her] mental impairments, for which Dr. Belancourt was not treating [her].");
Campos v. Colvin, No. CA 13-216 ML, 2014 WL 2453358, at *16 (D.R.I. June 2, 2014)
(unpublished) ("[The p]laintiff tries to augment her mental impairments by
focusing on [her primary care doctor's] references to depression and
anxiety. . . .  [T]hese references do not represent a diagnosis from a
psychiatrist with the training to assess and diagnose such disorders . . . .").

after Defendant's Memorandum pointed out the defects in both parts of Plaintiff's foregoing contention (see Docket Entry 18 at 13-15), Plaintiff conceded (in his Supplemental Memorandum) that: (1) "the Appeals Council did not ignore the letter of [Nurse Practitioner] Allran . . . [but rather] did indeed reference that [letter]" (Docket Entry 19 at 1 (citing Tr. 11)); and (2) "nurse practitioners are not 'acceptable medical resources [sic]' under 20 C.F.R. [§] 404.1513(d)(1) and 20 C.F.R. [§] 416.913(d)(1)" (id. at 6-7). Put another way, by Plaintiff's own admission, his third assignment of error lacks any basis whatsoever.[16]

---

16 Regrettably, rather than stop with those concessions, Plaintiff's counsel struck back at Defendant's counsel for having professionally pointed out the deficiency of Plaintiff's position, by sarcastically "invit[ing] Government counsel to walk into the Duke University Medical Center, where [Plaintiff] has been a patient, and dismissively put down nurse practitioners." (Docket Entry 19 at 7.) That commentary deserves rebuke on at least two levels. First, Defendant's Memorandum did not "dismissively put down nurse practitioners," but instead merely cited controlling regulations (see Docket Entry 18 at 14-15); Plaintiff's counsel should not level false charges against a fellow attorney (particularly not in a court filing), see, e.g., Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"); N.C.R. Prof'l Conduct 4.4, comment [2] ("[U]nfounded personal accusations generally serve no substantial purpose other than to embarrass, delay, or burden others and violate this rule."). Second, Plaintiff's counsel should not have aimed snide invective at Defendant's counsel. See, e.g., United States v. Venable, 666 F.3d 893, 904 n.4 (4th Cir. 2012) (condemning directing of "sarcastic[]" remarks at opposing counsel as "disrespectful and uncivil"). In addition to the foregoing transgressions, Plaintiff's Supplemental Memorandum pointlessly assails the Social Security Administration for having failed "to catch up with modern 21st century medical practice, in which highly trained nurse practitioners, skilled in diagnosing and treating health conditions, and to an extent prescribing medicines, are the health partner of choice for millions of Americans." (Docket Entry 19 at 7.) Not content to rest there, four days later, Plaintiff's counsel filed an unauthorized Second Supplemental Memorandum asserting that, because (according to a "USA Today study released Juy [sic] 27, 2015") nurse practitioners receive payments for services under the Medicare program, the Social Security Administration cannot "at the same time dismiss the expert opinion of a nurse
(continued...)

### III. CONCLUSION

Plaintiff's Memorandum, Supplemental Memorandum, and Second Supplemental Memorandum all conclude with the same refrain: "This is a very sad case, but it is not a close case." (Docket Entry 12 at 4; Docket Entry 19 at 7; Docket Entry 20 at 2.) The Court should concur, though not (as to the latter point at least) for the reasons Plaintiff would have the Court so adjudge. Simply put, Plaintiff has utterly failed to show entitlement to relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for

---

16 (...continued)
practitioner in a disability case." (Docket Entry 20 at 1-2.) These comments serve no purpose in a legal brief. The Court must apply the laws and regulations that actually govern Social Security disability cases; it does not decide what laws and regulations should govern such matters. See, e.g., U.S. Const. art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."); 42 U.S.C. § 405(a) ("The Commissioner of Social Security shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder."); Chevron v. Natural Res. Def. Council, Inc., 467 U.S. 837, 864 (1984) ("[P]olicy arguments are more properly addressed to legislators or administrators, not to judges."); Barrett v. Indiana, 229 U.S. 26, 30 (1913) ("It is the province of the legislature to make the laws, and of the courts to enforce them."). The Congress has formed subcommittees to develop legislation concerning Social Security disability. See http://waysandmeans.house.gov/subcommittee/social-security (last visited Feb. 18, 2016); http://www.finance.senate.gov/about/subcommittees (last visited Feb. 18, 2016). The Social Security Administration employs a Deputy Commissioner for Legislation and Congressional Affairs, whose "duties include . . . [c]oordinating the development of legislative proposals designed to improve [the Social Security Administration's] programs . . . [and d]eveloping [Social Security Administration] regulations . . . ." https://www.ssa.gov/legislation (last visited Feb. 18, 2016). Going forward, Plaintiff's counsel should direct his Social Security disability policy prescriptions to venues of that sort, not to this Court. See generally Brown v. Clayton, No. 3:11CV714, 2013 WL 1409881, at *1 (D. Conn. Apr. 8, 2013) (unpublished) ("Motions filed with the Court are a vehicle for the articulation of specific facts and law that support a party's position relevant to a case. Such filings, however, are not meant to be a vehicle through which attorneys . . . emote [or] let off steam . . . .").

Summary Judgment (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) be granted, and that judgment be entered in favor of Defendant.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

February 19, 2016